This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40564**

**DAN WAGMAN, PH.D.,**

Plaintiff-Appellant,

v.

**SAN MIGUEL COUNTY,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Michael A. Aragon, District Court Judge**

Dan Wagman, Ph.D.
Ribera, NM

Pro Se Appellant

Long, Komer & Associates, P.A.
Gabriela M. Delgadillo
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}**     Plaintiff Dan Wagman appeals pro se from two district court orders: one granting summary judgment in favor of Defendant San Miguel County, and one denying Plaintiff's motion for reconsideration. Plaintiff argues that summary judgment was granted in error. We affirm.

## BACKGROUND

**{2}**     This case arises from two requests for records submitted by Plaintiff to Defendant under the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023). On June 15, 2020, Defendant received Plaintiff's first IPRA request seeking "all laws (state and local) pertaining specifically to property inspections performed by the San Miguel County (SMC) Assessor's Office." The same day, Defendant responded and told Plaintiff to "allow up to [fifteen] days from the date [Plaintiff's] request was received for response." On July 9, 2020, Plaintiff emailed Defendant again, stating that he had not received the requested documents and the deadline for Defendant to respond had passed. Defendant responded the same day and stated that it had responded to Plaintiff's request on June 18, 2020. Defendant also resent the email and the corresponding attachments. Plaintiff responded to the email, arguing that the provided document "doesn't even REMOTELY address [Plaintiff's request]." Plaintiff's request was then referred to Defendant's attorney.

**{3}**     Plaintiff submitted his second IPRA request on July 23, 2020, seeking documents that were responsive to specific hypothetical legal situations that Plaintiff posed to Defendant in the request. As with the first request, Defendant responded on the same day, informed Plaintiff that his request had been received, and asked Plaintiff to "allow up to [fifteen] days from the date [Plaintiff's] request was received for response." On July 27, 2020, Defendant "exercise[ed] a [fourteen] day extension," to which Plaintiff agreed and confirmed that Defendant's response was "due by August 21, 2020."

**{4}**     Then, on August 12, 2020, Plaintiff sent an email regarding his first IPRA request stating,"[Defendant] leaves me with no alternative but to pursue this matter in court where I shall seek all remedies available by law." In response, Defendant stated it had "already responded to [Plaintiff's first] request," and instructed Plaintiff that, "If that response was insufficient, then you must either rephrase the question or identify . . . how the answer was incomplete." Turning to Plaintiff's second IPRA request, Defendant responded to each question Plaintiff posed by stating that "IPRA applies to documents already in existence" and "IPRA does not require responses to speculative questions or requests which have different scenarios," and thus, it had no documents that were responsive to Plaintiff's request.

**{5}**     On October 8, 2020, Plaintiff filed his complaint against Defendant for damages pursuant to IPRA. *See* § 14-2-12(A). Defendant moved to dismiss the complaint, arguing that "Plaintiff's requests did not seek public records, as . . . defined in [IPRA]." After hearing argument on the motion, the district court denied Defendant's motion. Three months later, Defendant moved for summary judgment arguing again that "Plaintiff's requests did not seek public records." After hearing argument from both parties, the district court granted Defendant's motion for summary judgment and dismissed Plaintiff's complaint without prejudice. Plaintiff then moved for reconsideration, which was denied by the district court. Plaintiff appeals.

**DISCUSSION**

**{6}** Plaintiff argues that the district court erred by granting summary judgment because Defendant violated IPRA by not providing responsive documents to Plaintiff's IPRA requests.[1] "To determine whether a public record is 'responsive,' courts must evaluate whether the IPRA request identified the record 'with reasonable particularity.'" *Am. Civ. Liberties Union of N.M. v. Duran*, 2016-NMCA-063, ¶ 27, 392 P.3d 181 (quoting § 14-2-8(C)). Here, we analyze the uncontested language of Plaintiff's IPRA requests to determine if the requests were reasonably particular as to records maintained or held by Defendants, making our review de novo. *See Dunn v. N.M. Dep't of Game & Fish*, 2020-NMCA-026, ¶ 3, 464 P.3d 129 (construing IPRA and applying "the relevant case law to undisputed facts" de novo).

**{7}** Plaintiff argues that the district court erred in granting summary judgment because, as "IPRA's exceptions do not list laws and statutes as being exempt from public inspection he was entitled to inspect them." Defendant asserts that, because Plaintiff's first request sought "laws and regulations promulgated by the State," which "are not [Defendant's] records," Defendant "[was] not compelled under IPRA to download, copy and provide these laws to [Plaintiff]," and therefore it did not violate IPRA. Defendant also argues that Plaintiff's second request, which sought "[]answers to hypothetical situations such as what would happen if someone were found to have a certain number of cattle on a certain amount of land and request for reasoning as to why a tax item appeared on one form and not another[] is not contemplated or governed by IPRA either," and therefore Defendant's denial of Plaintiff's request did not violate IPRA. Under the circumstance established by the record in this case, Defendant did not violate IPRA because Plaintiff's requests failed to identify the records sought with reasonable particularity and Defendant was entitled to summary judgment as a matter of law.

**{8}** To determine if Plaintiff's requests properly sought "public records," we must interpret the language of IPRA. "We construe IPRA in light of its purpose and interpret it to mean what the Legislature intended it to mean, and to accomplish the ends sought to be accomplished by it." *Faber v. King*, 2015-NMSC-015, ¶ 8, 348 P.3d 173 (internal quotation marks and citation omitted). "In discerning the Legislature's intent, we are

---

[1]Plaintiff also argues that the district court provided legal advice to Defendant by asking Defendant if they would be seeking costs and fees. However, Plaintiff fails to develop this argument and support it with citations to authority. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be."); *Lee v. Lee* (*In re Adoption of Doe*), 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Therefore, we do not reach this argument.
Plaintiff seemingly makes numerous additional arguments throughout his brief in chief, but fails to properly develop and support those arguments. *See State v. Laney*, 2003-NMCA-144, ¶¶ 32-33, 134 N.M. 648, 81 P.3d 591 (refusing to address confusing arguments, where the brief in chief cites no standard of review, points to no specific error, requests no particular relief, and does not cite to the record directing us to where the arguments were preserved); *see also Newsome v. Farer*, 1985-NMSC-096, ¶ 18, 103 N.M. 415, 708 P.2d 327 ("Although pro se pleadings are viewed with tolerance, a pro se litigant, having chosen to represent himself, is held to the same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar." (emphasis and citation omitted)). Therefore, we do not reach the many undeveloped arguments that Plaintiff raises on appeal.

aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* ¶ 9 (alteration, internal quotation marks, and citation omitted). "We examine the overall structure of the statute and its function in the comprehensive legislative scheme." *Id.*

**{9}** IPRA allows a person to inspect public records by "submit[ting] an oral or written request to the [records] custodian." Section 14-2-8(A). The request "shall identify the records sought with reasonable particularity." Section 14-2-8(C). In relevant part, IPRA defines public records as "all documents . . . and other materials, regardless of physical form or characteristics, that are used, created, received, *maintained or held by* or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained." Section 14-2-6(H) (emphasis added). However, IPRA does not "require a public body to create a public record." Section 14-2-8(B).

**{10}** Plaintiff's first IPRA request stated, in pertinent part:

> I wish to obtain electronic copies, such as PDF's [sic] or, if available, as Online [sic] links, all laws (state and local) pertaining specifically to property inspections performed by the SMC Assessor's Office.
>
> The requested information is all-inclusive but by way of example should include, where available, all laws/regulations/policies, or listed under any other related name, that outline, and are not limited to, the legal authority the [SMC] Assessor's Office possesses in performing private property inspections, the limits of such inspections, the process by which property owners are notified of the necessity to perform an inspection, the information an inspection request must contain, property owner response requirements, property owner inspection appeal process, time-frame and procedure property owner is granted in responding to inspection requests, property owner inspection denial rights, identification requirements inspectors must present, inspector conduct requirements, legal inspection recording requirements (e.g., pen-and-paper inspection sheets, photographs, video, etc.), property owner inspection supervision rights, etc.

**{11}** Plaintiff's second IPRA request stated, in pertinent part:

> I wish to obtain electronic copies, such as PDF's [sic] or, if available, as Online [sic] links, all laws/rules/regulations/policies/documentation, etc. (state and local) pertaining specifically to the following:
>
> 1.  In the SMC Notice of Valuation, the "Previous Year's Tax Rate" does not include Luna NR and Tier NR taxes. I am to understand that these taxes refer to Luna Vocational Non-Residential and Tierra Y Montes

Non-Residential, respectively. I wish to understand, a) why these taxes do not appear in the Previous Year's Tax Rate on the Notice of Valuation, and b) what specifically these taxes are for, e.g., might Luna refer to Luna Community College; what is Tierra y Montes?

2.      Provide those NM statutes, SMC codes, and other pertinent assessment documents/procedures/tables/etc. applicable to the [SMC] Assessor's [Office] determination that my property should be reclassified as "Dry Land Farming," to include the method and supporting primary documentation by which the valuation of $1,800 was calculated in 2019.

3.      The SMC Assessor's Office indicated that my property area (Class A) requires 71 acres per head of cattle. Provide all documentation regarding laws that might be violated if one head or more are found on 40 acres within that area, to include the applicable property owner's rights and responsibilities.

**{12}**    Plaintiff's first request does not identify a public record maintained or held by Defendant with reasonable particularity, and therefore is not a request that is appropriate under IPRA. "To initiate a public records request, any person may contact the records custodian at the desired governmental entity and 'identify the records sought with reasonable particularity.'" *Duran*, 2016-NMCA-063, ¶ 26 (quoting §14-2-8(C)). IPRA allows for enforcement actions if a public body fails to provide responsive records. *See* §§ 14-2-11, -12. "To determine whether a public record is 'responsive,' courts must evaluate whether the IPRA request identified the record 'with reasonable particularity.'" *Duran*, 2016-NMCA-063, ¶ 27 (quoting § 14-2-8(C)); *cf.* Rule 1-034 NMRA comm. cmt. ("Parties seeking the production or inspection of documents within the scope of discovery must set forth the items to be inspected either by individual item or by category and describe each item and category with reasonable particularity. In this context, a discovery request should be sufficiently definite and limited in scope that it can be said to apprise a person of ordinary intelligence what documents are required and to enable the court to ascertain whether the requested documents have been produced." (alterations, omission, internal quotation marks, and citations omitted)).

**{13}**    Plaintiff's first request was not crafted "with reasonable particularity" to obtain anything other than certain laws or statutes, or the basis within which the SMC Assessor's Office believes provides it authority to undertake property inspections. Plaintiff's request, however, fails to seek records that are kept by Defendant and thus suitable for inspection under IPRA. Rather, Plaintiff's request begins by requesting "all laws (state and local) pertaining specifically to property inspections performed by the SMC Assessor's Office." The request goes on to seek laws specifically pertaining to "the legal authority the [SMC] Assessor's Office possesses in performing private property inspections, the limits of such inspections, the process by which property owners are notified of the necessity to perform an inspection, the information an inspection request must contain, property owner response requirements" and other specific queries. These queries, although specific in their language, lack reasonable particularity as to specific

public records maintained or held by Defendant because they effectively seek statutory text or pose legal questions. For example, what authority, if any, the SMC Assessor's Office has in performing real or hypothetical private property inspections is a legal question, which requires legal analysis to answer and to which any answer, even an answer that points to a statute, would be a legal opinion. The "authority" sought by Plaintiff is set forth in laws publicly available to any citizen; stated another way, IPRA was not assembled to serve as a substitute for law libraries or other such means by which statutes, rules, or regulations may be identified and accessed without burdening an agency whose purpose is not to maintain or supply such items. Thus, a public body does not violate IPRA by failing to provide laws or legal opinions as responsive documents to IPRA requests, nor is it liable for damages, costs, or attorney fees if the language of the request fails to identify any existing public record with reasonable particularity. *See* §§ 14-2-8(C), -11(C), -12(D). Given the content and nature of Plaintiff's first request, Defendant was under no duty to produce any records to Plaintiff in response to his first request.[2]

**{14}** Plaintiff's second request also fails to identify any specific record sought with reasonable particularity. Rather, Plaintiff's second request again seeks applicable laws and legal advice, this time in response to specific hypothetical legal situations that Plaintiff poses and for which Plaintiff seeks answers. Similar to Plaintiff's first request, these questions are specific to Plaintiff's circumstances, but fail to identify any records with reasonable particularity that Defendant may or may not possess and would be suitable for inspection. They also require Defendant to create documents. Therefore, Plaintiff's second request is not valid under IPRA and Defendant properly denied the request.[3]

**{15}** Plaintiff further argues that it was error for the district court to grant summary judgment because genuine issues of material fact exist in this case. However, "[a]n issue of fact is 'material' if the existence . . . of the fact is of consequence under the substantive rules of law governing the parties' dispute." *Martin v. Franklin Cap. Corp.*, 2008-NMCA-152, ¶ 6, 145 N.M. 179, 195 P.3d 24. Here, if we were to accept the facts as Plaintiff argues, our determination of whether Plaintiff's requests were legally viable under IPRA would remain unchanged. Therefore, no genuine issues of material fact exist in this case and we do not address the issue further.

---

2The dissent notes that "[t]he latter portion of Plaintiff's first request can reasonably be read to describe Defendant's internal guidelines, policies, checklists and other materials it may use as guides to conduct property tax and valuation assessments." *Dissent* ¶ 23. Indeed, Defendant provided documents regarding property classifications and associated tax rates for San Miguel County. However, because we conclude that Plaintiff's request was not reasonably particular and the parties do not focus their argument on the responsiveness of the disclosed documents, we are precluded from determining whether the documents produced by Defendant are responsive. *See Duran*, 2016-NMCA-063, ¶ 27 ("To determine whether a public record is 'responsive,' courts must evaluate whether the IPRA request identified the record 'with reasonable particularity.'" (quoting § 14-2-8(C)).

3Plaintiff also argued that Defendant failed to provide timely responses as required under IPRA. However, because the language of Plaintiff's request fails as a matter of law, we do not address this argument further.

**{16}** Because neither of Plaintiff's requests identified the records maintained or kept by Defendant with necessary particularity under IPRA, Defendant has not violated IPRA and is therefore not liable for damages, costs, and attorney fees for failing to produce the records. *See* §§ 14-2-8(C), -11(C), -12(D). As such, Defendant was entitled to summary judgment as a matter of law and we find no merit to Plaintiff's assertions of error in the district court's grant of summary judgment to Defendant.

**CONCLUSION**

**{17}** Based on the above analysis, we affirm.

**{18}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**I CONCUR:**

**J. MILES HANISEE, Judge**

**MICHAEL D. BUSTAMANTE, Judge, retired**
**Sitting by designation, partially concurring and partially dissenting**

**BUSTAMANTE, Judge, retired, sitting by designation (partially concurring and partially dissenting).**

**{19}** I agree with the majority's decision to affirm dismissal of Plaintiff's complaint based on his second IPRA request, but I am concerned that a major part of its rationale is off the mark. *Maj. op.* ¶ 13. Any response to the three items listed in Plaintiff's second request would have required Defendant to engage in analysis and to create new documents. Section 14-2-8(B) specifically states the nothing in IPRA should "be construed to require a public body to create a public record." That provision is dispositive of the issue. The majority opinion mentions the statute, but injects, and primarily relies on, a discussion about whether the request identified records with "reasonable particularity" as required by Section 14-2-8(C). *Maj. op.* ¶ 13. In my view, that provision is not applicable. The request was specific and clear as to what Plaintiff wanted. The error Plaintiff made was not related to "particularity." *See* § 14-2-8(C). Plaintiff erred in asking for records that did not exist when he asked for them but rather would have to be created. My concern is that by highlighting particularity, the majority opinion has the potential to mislead both requesters and public body record custodians.

**{20}** I agree with the majority's decision to affirm dismissal of Plaintiff's complaint based on the portion of his first IPRA request that could be read to ask for state statutes and provisions of the state administrative code. *Maj. op.* ¶ 14. I do so with some trepidation because—as Defendant noted in its briefing to the district court it is an open question whether statutes—and by reasonable extension, state administrative code provisions—"fall under the penumbra of a 'public record' as defined in IPRA." That is the

issue the parties primarily argued below and here. In its answer brief in this Court, Defendant asserts that the "only question" the Court needs to concern itself with is whether Plaintiff's requests sought "public records" as defined by IPRA. The issue deserves an answer in a precedential opinion.

**{21}** The difficulty the panel has encountered is that the briefing throughout has not been adequate to the task. Plaintiff as a self-represented individual does not understand the legal problem sufficiently to be of much help, and Defendant fails to address the issue in sufficient depth and nuance in light of the broad language in the definition of "public record" in IPRA. For example, Defendant obviously "uses" state laws and regulations to administer and conduct its property tax assessment activities. Does that bring those materials within the definition provided in Section 14-2-6(H) given that the section references "use" as an aspect of public records? I, at least, am not comfortable addressing the issue without able help from the parties. But, the result reached in the opinion makes sense to me on a practical and theoretical level for the reasons stated therein. *Maj. op.* ¶ 16. I content myself with resolving the matter for these parties, but do not want to enter a precedential ruling. I assume the majority opinion feels the same hesitation and views the solution in a similar vein.

**{22}** As with my conclusion regarding the second request, I am concerned that the majority has used the concept of particularity as a means of avoiding the real issue so unhelpfully argued by the parties. *Maj. op.* ¶ 14. If that is the case, I again caution against its use. Plaintiff's request was clear and specific; applying our nonprecedential ruling, he simply erroneously requested some records not subject to IPRA.

**{23}** I dissent from the majority's decision to affirm the district court dismissal of Plaintiff's entire complaint. The latter portion of Plaintiff's first request can reasonably be read to describe Defendant's internal guidelines, policies, checklists and other materials it may use as guides to conduct property tax and valuation assessments. Such materials—to the extent they exist—are clearly covered by IPRA. As such, dismissal of the entire complaint was improper.

**{24}** The majority opinion quotes Plaintiff's first request in full at paragraph 10. In its arguments to the district court and to this Court, Defendant referenced only the introductory phrases of the request as a means of characterizing the entire request as one for state level "laws/regulations/policies" concerning the legal authority of the SMC Assessor's Office to do its work. Defendant has never parsed the language in the request starting with the words "the process by which property owners are notified of the necessity to perform an inspection" and continuing to the end of the request. All of this latter verbiage describes the practical and real-world details of how the SMC Assessor's Office conducts its affairs on a day-to-day basis. The language does not ask for state level legal authority; it asks for the type of guideline and checklist documents that any functioning organization would use to efficiently do its work. The state statutes are not designed or meant to provide ground-level instructions, and I find it impossible to imagine that Defendant's SMC Assessor's Office conducts its work in a local guideline vacuum.

**{25}** Defendant's broad-stroke approach ignored the actual language of the request and the district court did not raise any concerns. Unfortunately, Plaintiff apparently did not appreciate the effect of Defendant's approach to arguing its motion for summary judgment, and he did not counter with an argument focused on the language itself. Plaintiff did, however, make clear that his request included "local laws/regulations/policies." In addition, Plaintiff pointed out that his own property had been assessed and asserted that it was absurd that there would not be responsive records covering the assessment of his property. Plaintiff pithily inquired, "[H]ow can government assess property and taxes without documents guiding the process?" Plaintiff reiterated these arguments in his motion for reconsideration. These arguments were sufficient to alert the district court that Defendant's broad characterization of the nature of the first request was inaccurate. Similarly, Plaintiff's observation in his brief in chief that responsive documents—rules/laws/procedures/policies—must exist, otherwise the inspection of his own property would have been illegal, should be sufficient to prompt this Court to reverse and remand in order to determine whether there are local responsive documents that should have been produced.

**{26}** For these reasons, I concur in the result in part and respectfully dissent in part from the majority's analysis.

**MICHAEL D. BUSTAMANTE, Judge, retired**
**Sitting by designation**